UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOE A. RODRIGUES,<br>an individual;<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC a Delaware Limited Liability Company; DOES 1 through 10, INCLUSIVE,<br><br>Defendant. | Civil Acton No. _____ |

COMES NOW, Plaintiff JOE A. RODRIGUES (hereinafter "Plaintiff") *pro se* and for his complaint against Defendant OCWEN LOAN SERVICING, LLC (hereinafter "Defendant" or "Ocwen") and complains as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the action is between parties that are citizens of different states and the amount in controversy is greater than $75,000.

2. Venue is proper in this Court pursuant to 28 U.S.C. 1391 inasmuch as the unlawful practices are alleged to have been committed in this District, Defendant regularly conducts business in this District, and Plaintiff resides in this District.

1

## PARTIES

3. Plaintiff is an individual residing at 538 Elm Street East, Raynham, Massachusetts 02767 (hereinafter "Subject Property") in the County of Bristol.

4. At all times herein mentioned, Defendant, Ocwen, is and was, a Delaware limited liability corporation, with headquarters and a principle place of business in Florida, with members residing in Florida, and at all times herein mentioned was conducting ongoing business in the state of Massachusetts and claims an interest adverse to the right, title and interests of Plaintiff in Subject Property.

## STATEMENT OF FACTS

5. Plaintiff currently resides in Subject Property and Ocwen has been the servicer of the mortgage loan attributed to Subject Property (hereinafter "the Loan") since December 7, 2006. The Loan amortized over 50 years at a 5.8% interest rate.

6. On or about December 7, 2006, the mortgage balance was $475,000. For roughly five years, Plaintiff made monthly payments to the Loan.

7. At a time subsequent to January 2011, Plaintiff began experiencing various financial hardships that caused him to have difficulty making payments on the Loan. This financial hardship resulted in Plaintiff becoming delinquent on two mortgage payments. At the time Plaintiff fell delinquent on the Loan, the Loan balance should have been $464,374.71. Plaintiff made a request to Ocwen for mortgage assistance and submitted the proper documentation required for obtaining a loan modification.

8. In January 2011, Ocwen approved Plaintiff for a loan modification. Following the modification, Ocwen informed Plaintiff that the resulting loan balance was $482,140.53 with a 2.0% interest rate. Furthermore, Ocwen informed Plaintiff that after applying a deferred balance of $9,900.00, the remaining loan balance was $472,240.53 applied to the modification. Such communications were false and misrepresentations since a proper 50 year amortization schedule would result in a mortgage balance of $464,374.71.

9. As a result of Ocwen's misrepresentations, $17,765.82 was improperly applied to Plaintiff's balance on the Loan. Therefore, a 2.0% interest rate was improperly applied to a false balance of $17,765.82.

10. The Loan was again modified in July 2014.

11. Following the January 2011 modification, Plaintiff made roughly 41 payments towards the Loan. Each payment applied $1,996.43 to the principle of the Loan. However, in July 2014, Ocwen communicated that the principle balance on the Loan $472,823.93 following the July 2014 modification. Despite making 41 payments towards the Loan (where $1,996.43 was applied towards the principle balance) between 2011 and July 2014, Ocwen communicated that the principle balance had actually increased by $383.40 since the original modification in 2011. Such communication was false and a misrepresentation.

12. Furthermore, Ocwen informed Plaintiff (via the 2014 modification) that a balloon payment of $185,996.85 existed on the modified loan. Such communication is false and a misrepresentation since a balloon payment in the amount of $185,996.85 makes no mathematical sense.

13. Despite making multiple payments towards the Loan's principle for over ten years, Ocwen has represented that the Loan's balance has steadily increased.

## COUNT I
## FRAUD

14. Paragraphs 1 through 13 are realleged as though fully set forth herein.

15. Fraud occurs under any of the following circumstances: When there is an affirmative misrepresentation — the suggestion, as a fact, of that which is not true by one who does not believe it to be true; a concealment or half truth — the suppression of a fact, by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or a false promise — a promise made without any intention of performing it.

16. Fraud also occurs when a defendant makes an untrue representation of a material fact without a reasonable ground for its truth or in a manner not warranted by the available information. Such a representation must be made with the intent that the plaintiff would and did rely on it, to his or his detriment and harm.

17. In this matter, Defendant misrepresented material facts, knowing that its representations were false and by making their representations without reasonable grounds, with the intent that Plaintiff would rely on their misrepresentations, all to Plaintiff's harm.

18. These misrepresentations were made by Defendant through its employees and agents. Its misrepresentations were made by heretofore unidentified employees and agents of Defendant whose identities and specific capacities will be established by the discovery to be conducted in this case.

19. Ocwen perpetrated their fraud in actions which included but were not limited to the following activities, and as described with specificity in the factual allegations of this claim:

a. Between December 2006 and January 13, 2011, Defendant misrepresented the principle balance of the Loan. When Plaintiff obtained his first loan modification in 2011, the loan modification documentation demonstrated that Defendant misrepresented the principle balance as being $482,140.53. Such communication was false and an intentional misrepresentation on Defendant's part since in actuality, Plaintiff's principle balance was roughly $475,000.00 in December 2006 and between December 2006 and January 2011, Plaintiff made monthly payments to the Loan's principle balance. Defendant's January 2011 communication that the principle balance was $482,140.53 and its communications regarding the principle balance every month thereafter are false and mathematically unsound.

b. Between January 2011 and July 2014, Defendant's customer service agents misrepresented the principle balance of the Loan. When Plaintiff obtained his loan modification in July 2014, the loan modification documentation demonstrated that Defendant misrepresented the principle balance as being $472,823.93. Such communication was false and an intentional misrepresentation on Defendant's part since Defendant purported Plaintiff's principle balance to be $482,140.53 in January 2011 and between January 2011 and July 2014, Plaintiff made 41 monthly payment of $2,210.07 (whereas $1,996.43 was applied to the Loan's principle). Defendant's communication that the principle balance was $472,823.93 in July 2014 and its communications regarding the principle balance every month thereafter are false and mathematically unsound.

c. Defendant's customer service representatives and the 2014 loan modification documentation informed Plaintiff that a balloon payment of $185,996.85 existed on

the modified loan. Such communication is false and a misrepresentation since a balloon payment in the amount of $185,996.85 does not make mathematical sense.

20. Defendant intended Plaintiff to rely on its misrepresentations and omissions.

21. Plaintiff justifiably relied on Defendant's misrepresentations and omissions and Plaintiff suffered harm since Plaintiff has lost thousands of dollars due to paying funds to a false principle, Defendant's misrepresentations have caused Plaintiff to unjustifiably lose equity in Subject Property, Plaintiff has incurred court and legal fees to enforce his legal rights, and Plaintiff has suffered the slander of his representation due to the fact that foreclosure proceedings have been attributed to him and reported to credit reporting agencies and bureaus. Furthermore, Defendant has been unjustly enriched due to inflated payments being paid towards a false principle balance.

## COUNT II
## VIOLATION OF FTC ACT, 15 U.S.C. § 45(a)
### (Ocwen)

22. Paragraphs 1 through 21 are realleged as though fully set forth herein.

23. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive practices in or affecting commerce."

24. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

25. Defendant made deceptive misrepresentations or omissions of material fact in the following manner:

    a. Between December 2006 and January 13, 2011, Defendant misrepresented the principle balance of the Loan. When Plaintiff obtained his first loan modification in

6

2011, the loan modification documentation demonstrated that Defendant misrepresented the principle balance as being $482,140.53. Such communication was false and an intentional misrepresentation on Defendant's part since in actuality, Plaintiff's principle balance was roughly $475,000.00 in December 2006 and between December 2006 and January 2011, Plaintiff made monthly payments to the Loan's principle balance. Defendant's January 2011 communication that the principle balance was $482,140.53 and its communications regarding the principle balance every month thereafter are false and mathematically unsound.

b. Between January 2011 and July 2014, Defendant's customer service agents misrepresented the principle balance of the Loan. When Plaintiff obtained his loan modification in July 2014, the loan modification documentation demonstrated that Defendant misrepresented the principle balance as being $472,823.93. Such communication was false and an intentional misrepresentation on Defendant's part since Defendant purported Plaintiff's principle balance to be $482,140.53 in January 2011 and between January 2011 and July 2014, Plaintiff made 41 monthly payment of $2,210.07 (whereas $1,996.43 was applied to the Loan's principle). Defendant's communication that the principle balance was $472,823.93 in July 2014 and its communications regarding the principle balance every month thereafter are false and mathematically unsound.

c. Defendant's customer service representatives and the 2014 loan modification documentation informed Plaintiff that a balloon payment of $185,996.85 existed on the modified loan. Such communication is false and a misrepresentation since a balloon payment in the amount of $185,996.85 does not make mathematical sense.

26. Such misrepresentations and omissions were made with the intent to deceive Plaintiff and induce Plaintiff's reliance upon the misrepresentations and omissions.

27. Plaintiff justifiably relied on Defendant's misrepresentations and omissions and Plaintiff suffered harm since Plaintiff has lost thousands of dollars due to paying funds to a false principle, Defendant's misrepresentations have caused Plaintiff to unjustifiably lose equity in Subject Property, Plaintiff has incurred court and legal fees to enforce his legal rights, and Plaintiff has suffered the slander of his representation due to the fact that foreclosure proceedings have been attributed to him and reported to credit reporting agencies and bureaus. Furthermore, Defendant has been unjustly enriched due to inflated payments being paid towards a false principle balance.

28. Defendant's statements were directly related to mortgage loans and thus affect commerce, falling within the scope of FTC Act, 15 U.S.C. § 45(a).

## COUNT III
## MISREPRESENTATION

29. Plaintiff realleges and incorporate by reference paragraphs 1 to 28 of this Complaint.
30. In this matter, Defendant affirmatively misrepresented material facts, knowing that its representations were false and by making their representations without reasonable grounds, with the intent that Plaintiff would rely on its misrepresentations, all to Plaintiff's harm.
31. These affirmative misrepresentations were made knowingly by Defendant through its customer service representatives and agents.
32. Defendant perpetrated its misrepresentation actions which included but were not limited to the following activities, and as described with specificity in the factual allegations of this claim and the aforementioned factual statements:

a. Between December 2006 and January 13, 2011, Defendant misrepresented the principle balance of the Loan. When Plaintiff obtained his first loan modification in 2011, the loan modification documentation demonstrated that Defendant misrepresented the principle balance as being $482,140.53. Such communication was false and an intentional misrepresentation on Defendant's part since in actuality, Plaintiff's principle balance was roughly $475,000.00 in December 2006 and between December 2006 and January 2011, Plaintiff made monthly payments to the Loan's principle balance. Defendant's January 2011 communication that the principle balance was $482,140.53 and its communications regarding the principle balance every month thereafter are false and mathematically unsound.

b. Between January 2011 and July 2014, Defendant's customer service agents misrepresented the principle balance of the Loan. When Plaintiff obtained his loan modification in July 2014, the loan modification documentation demonstrated that Defendant misrepresented the principle balance as being $472,823.93. Such communication was false and an intentional misrepresentation on Defendant's part since Defendant purported Plaintiff's principle balance to be $482,140.53 in January 2011 and between January 2011 and July 2014, Plaintiff made 41 monthly payment of $2,210.07 (whereas $1,996.43 was applied to the Loan's principle). Defendant's communication that the principle balance was $472,823.93 in July 2014 and its communications regarding the principle balance every month thereafter are false and mathematically unsound.

c. Defendant's customer service representatives and the 2014 loan modification documentation informed Plaintiff that a balloon payment of $185,996.85 existed on

the modified loan. Such communication is false and a misrepresentation since a balloon payment in the amount of $185,996.85 does not make mathematical sense.

33. Defendant's agents intended for Plaintiff to rely on its misrepresentations.

34. Plaintiff justifiably relied on Defendant's misrepresentations and omissions and Plaintiff suffered harm since Plaintiff has lost thousands of dollars due to paying funds to a false principle, Defendant's misrepresentations have caused Plaintiff to unjustifiably lose equity in Subject Property, Plaintiff has incurred court and legal fees to enforce his legal rights, and Plaintiff has suffered the slander of his representation due to the fact that foreclosure proceedings have been attributed to him and reported to credit reporting agencies and bureaus. Furthermore, Defendant has been unjustly enriched due to inflated payments being paid towards a false principle balance.

## COUNT IV
## VIOLATION OF MASSACHUSETTS' CONSUMER PROTECTION ACT, MASSACHUSETTS GENERAL LAW CHAPTER 93A

35. Paragraphs 1 through 34 are realleged as though fully set forth herein.

36. Massachusetts's Consumer Protection Act ("93A") prohibits misrepresentations, deception, fraud, false pretense, or false promises by suppliers in a consumer transaction.

37. Defendant made deceptive misrepresentations or omissions in the following manner:

    a. Between December 2006 and January 13, 2011, Defendant misrepresented the principle balance of the Loan. When Plaintiff obtained his first loan modification in 2011, the loan modification documentation demonstrated that Defendant misrepresented the principle balance as being $482,140.53. Such communication was false and an intentional misrepresentation on Defendant's part since in actuality, Plaintiff's principle balance was roughly $475,000.00 in December 2006 and between

10

December 2006 and January 2011, Plaintiff made monthly payments to the Loan's principle balance. Defendant's January 2011 communication that the principle balance was $482,140.53 and its communications regarding the principle balance every month thereafter are false and mathematically unsound.

b. Between January 2011 and July 2014, Defendant's customer service agents misrepresented the principle balance of the Loan. When Plaintiff obtained his loan modification in July 2014, the loan modification documentation demonstrated that Defendant misrepresented the principle balance as being $472,823.93. Such communication was false and an intentional misrepresentation on Defendant's part since Defendant purported Plaintiff's principle balance to be $482,140.53 in January 2011 and between January 2011 and July 2014, Plaintiff made 41 monthly payment of $2,210.07 (whereas $1,996.43 was applied to the Loan's principle). Defendant's communication that the principle balance was $472,823.93 in July 2014 and its communications regarding the principle balance every month thereafter are false and mathematically unsound.

c. Defendant's customer service representatives and the 2014 loan modification documentation informed Plaintiff that a balloon payment of $185,996.85 existed on the modified loan. Such communication is false and a misrepresentation since a balloon payment in the amount of $185,996.85 does not make mathematical sense.

38. Plaintiff justifiably relied on Defendant's misrepresentations and omissions and Plaintiff suffered harm since Plaintiff has lost thousands of dollars due to paying funds to a false principle, Defendant's misrepresentations have caused Plaintiff to unjustifiably lose equity in Subject Property, Plaintiff has incurred court and legal fees to enforce his legal rights, and

Plaintiff has suffered the slander of his representation due to the fact that foreclosure proceedings have been attributed to him and reported to credit reporting agencies and bureaus. Furthermore, Defendant has been unjustly enriched due to inflated payments being paid towards a false principle balance.

39. Defendant's conduct was and is willful or knowing within the meaning of 93A.

40. Plaintiff made demands to Ocwen for relief and Defendant's refusal to grant relief upon demand was and is in bad faith, with knowledge or reason to know that the act or practice complained of violated 93A.

## EQUITABLE ESTOPPEL

41. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

42. The essence of an estoppel is that the party to be estopped has by language or conduct led another to do that which he would not otherwise have done and as a result thereof that he has suffered injury. A person or entity may not deny the existence of a state of facts if he or she intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his or his detriment.

43. The doctrine of equitable estoppel is based on the foundation of conscience and fair dealing.

44. Defendant should be estopped from asserting any right to foreclose upon or take possession of Subject Property for the following reasons:

   a. Defendant made certain misrepresentations or omissions to Plaintiff as described throughout this Complaint.

   b. Defendant intended Plaintiff to rely on their misrepresentation.

45. Plaintiff justifiably relied on Defendant's misrepresentations and omissions and Plaintiff suffered harm since Plaintiff has lost thousands of dollars due to paying funds to a false principle, Defendant's misrepresentations have caused Plaintiff to unjustifiably lose equity in Subject Property, Plaintiff has incurred court and legal fees to enforce his legal rights, and Plaintiff has suffered the slander of his representation due to the fact that foreclosure proceedings have been attributed to him and reported to credit reporting agencies and bureaus. Furthermore, Defendant has been unjustly enriched due to inflated payments being paid towards a false principle balance.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests the following relief:

a. Enter a judgment declaring the acts and practices of Defendant complained of herein to constitute a breach of contract and a breach of the covenant of good faith and fair dealing, as well as a declaration that Ocwen is required by the doctrine of promissory estoppel to offer Plaintiff a permanent modification to Plaintiff.

b. Grant a permanent or final injunction enjoining Defendant's agents and employees, affiliates and subsidiaries from continuing to harm Plaintiff and continuing foreclosure activity;

c. Order specific performance of Defendant's contractual obligations together with other relief required by contract and law;

d. Award any actual and/or statutory minimum damages;

e. Award damages for emotional distress;

c. Order specific performance of Defendant's contractual obligations together with other relief required by contract and law;

d. Award any actual and/or statutory minimum damages;

e. Award damages for emotional distress;

f. Award Plaintiff the costs of this action, including the fees and costs of experts, and any reasonable attorney's fees should Plaintiff retain counsel;

g. Award Plaintiff exemplary and punitive damages in a sum according to proof.

h. Grant Plaintiff such other and further relief as this Court finds necessary and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all triable issues.

Dated: December 21, 2015                    Respectfully submitted,

*(signature)*

JOE A. RODRIGUES
Plaintiff *Pro Se*
538 Elm Street East
Raynham, Massachusetts 02767

c. Order specific performance of Defendant's contractual obligations together with other relief required by contract and law;

d. Award any actual and/or statutory minimum damages:

e. Award damages for emotional distress;

f. Award Plaintiff the costs of this action, including the fees and costs of experts, and any reasonable attorney's fees should Plaintiff retain counsel;

g. Award Plaintiff exemplary and punitive damages in a sum according to proof.

h. Grant Plaintiff such other and further relief as this Court finds necessary and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all triable issues.

Dated: December 21, 2015                    Respectfully submitted,

*[signature]*
JOE A. RODRIGUES
Plaintiff *Pro Se*
538 Elm Street East
Raynham, Massachusetts 02767