UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOE A. RODRIGUES,<br><br>        Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC;<br>and DOES 1 through 10.<br><br>        Defendants. | CIVIL NO.: 1:15-cv-14254-GAO |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.  INTRODUCTION**

This action arises out of Plaintiff Joe A. Rodrigues a/k/a Jose A. Rodrigues ("Plaintiff") and Isabel Rodrigues' (collectively "Borrowers") execution of an Adjustable Rate Balloon Note with a 30-Year Term and 50-Year Amortization for $475,000 on December 7, 2006, which was secured by a mortgage on their property. The loan was modified twice after Borrowers defaulted on their repayment obligations. Plaintiff commenced the instant action for fraud (Count I), violation of the Federal Trade Commission ("FTC") Act (Count II), misrepresentation (Count III), violation of M.G.L. c. 93A (Count IV), and equitable estoppel (Count V), alleging that Defendant Ocwen Loan Servicing, LLC ("Ocwen") misrepresented the monetary terms in the two written loan modification agreements, which Borrowers received, had the opportunity to review and signed.

Ocwen is entitled to judgment on the pleadings as to each of the five counts in the Complaint because: (i) the plain language of the loan modification agreements demonstrates that *the Complaint* is premised on fatal misrepresentations of fact and unsupported legal conclusions; (ii) the Complaint fails to allege sufficient facts to satisfy the elements of Plaintiff's claims

1

sounding in fraud/misrepresentation or for equitable estoppel or violation of M.G.L. c. 93A; (iii) there is no private right of action under the FTC Act; (iv) Plaintiff fails to satisfy the 30-day demand letter pleading requirement for his 93A claim; (v) Plaintiff's 93A claim is based on the same insufficient facts as his common law claims; and (vi) the Complaint is time-barred to the extent based on the terms of the early 2011 loan modification agreement.

## II. RELEVANT ALLEGATIONS AND DOCUMENTS

On December 7, 2006, Jose A. Rodrigues and Isabel Rodrigues (collectively "Borrowers") obtained a loan in the amount of $475,000 (the "Loan"). See Compl. ¶¶ 5-6; Ans. ¶¶ 5-6; Note ("Ex. A"); Mortgage ("Ex. B"). In return, Borrowers signed an Adjustable Rate Balloon Note with a 30-year term and 50-year amortization (the "Note"), and to secure repayment of the Note, signed a Mortgage with an Adjustable Rate Balloon Rider 30-Year Term/50-Year Amortization (collectively, the "Mortgage") on property located at 538 Elm Street E, Raynham, Massachusetts (the "Property"). Compl. ¶ 5; Ans. ¶¶ 4-5; Ex. A; Ex. B. The Note and Mortgage are attached hereto as Exhibits A and B, respectively.

By signing the Note, Borrowers agreed: (1) to make monthly payments by the 1st of each month; (2) to pay interest at a yearly rate of 5.8% until January 1, 2012, at which time the interest rate may change; (3) that each of their initial monthly payments under the Note would be $2,430.51, which amount may change; (4) to pay a late fee if their payment is not received by the 15th of the month the payment is due; and (5) that they would be in default if they failed to pay the full amount of each monthly payment on the due date. Ex. A at p. 1 § 2, p. 2 § 3, p. 3 § 7; see

also Ex. B, Balloon Rider. By signing the Mortgage, Borrowers agreed to also make monthly payments for escrow items (taxes and hazard insurance). Ex. B at pp. 4-5, §§ 1-3.[1]

Ocwen has serviced the Loan since approximately January 30, 2006.[2] Compl. ¶ 5; Ans. ¶¶ 4-5. Borrowers allege default on their repayment obligations financial hardship and application for a loan modification after January of 2011.[3] See Compl., ¶ 7; Ans. ¶ 7; see also 2011 LMA ("Ex. G") at ¶ 1(A). Borrowers were approved for a loan modification, and on January 13, 2011, signed a Home Affordable Modification Agreement and Balloon Disclosure (collectively, the "2011 LMA"). See Compl. ¶¶ 7-8; Ans. ¶¶ 7-8; Ex. G.

By signing the 2011 LMA, Borrowers agreed, in relevant part, as follows:

> **3. The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 2/1/2011 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 2/1/2011.
>
> A.     The new Maturity Date will be: 1/1/2037, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

---

[1] Borrowers also signed a Truth-in-Lending Disclosure Statement acknowledging receipt of the disclosure that the Loan would cost them $1,029,088.88, and that if they make all scheduled payments they will have paid $1,500,566.79. See Truth-in-Lending Disclosure Statement ("Ex. C").

[2] The current owner and holder of the Note and Mortgage is Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2007-1 Asset-Backed Certificates, Series 2007-1. See Assignment of Mortgage ("Ex. D").

[3] The Complaint misrepresents the timing, nature and extent of Borrowers' default and the amount due on the Loan. Borrowers were one month behind their payments beginning July 2009 and were two months behind from December 2009 through September 2010. See Account Statement, Sept. 7, 2010 ("Ex. E") (reflecting Loan due for July 1, 2009 payment, $9,798.72 in past due principal, interest and escrow payments, $2,094.32 in late charges, fees and costs, and total of $14,110.47 due Oct. 1, 2010); cf. Compl. ¶ 7 (falsely suggesting payments were current until after January 2011). Beginning in October 2010, Borrowers made payments pursuant to a Home Affordable Trial Period Plan to modify the Loan and bring it current. On November 8, 2010, Borrowers were sent the written 2011 LMA. See November 8, 2010 Letter to Borrowers ("Ex. F").

B.  The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $482,140.53 (the "New Principal Balance").

C.  $9,900.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $472,240.53. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 2/1/2011….

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

Ex. G; see also Ans. ¶ 8. By signing the 2011 LMA, Borrowers further agreed to continue to pay escrow items (taxes and hazard insurance), that $1,430.07 of each timely monthly payment in full would be applied to principal and interest until January 1, 2016, and that there would be a balloon payment. See Ex. G at § 3(C), § 4(B)-(E), and Balloon Disclosure; see also Ans. ¶¶ 8, 11.

After again defaulting on their repayment obligations, Borrowers were approved for a second modification of the Loan,[4] and on June 30, 2014, Borrowers signed a Loan Modification Agreement and Balloon Disclosure (collectively, the "2014 LMA"). See 2014 LMA ("Ex. J"). By signing the 2014 LMA, Borrowers agreed: (i) that the modification would become effective only if Borrowers made Trial Period payments consisting of an initial down payment and two monthly payments, each totalling $2,509.79 and of which $1,626.22 was for principal and

---

[4] The Loan account was at least one to two months behind from November 2012 to July 2013. Borrowers did not make any monthly payments from August 2013 to April 2014. Borrowers were sent the written 2014 LMA on February 19, 2014. See Letter to Borrowers, Feb. 19, 2014 ("Ex. H"); see also Account Statement, Mar. 17, 2014 ("Ex. I") (reflecting past due payment amount of $24,324.88 and escrow deficiency in amount of $9,180.95).

4

interest; (ii) that at the end of the Trial Period for the 2014 LMA, "the new principal balance due under [their] modified Note and Mortgage will be $472,823.93;" (iii) that the Note would become contractually current upon modification, but that fees and charges not included in the new principal balance would be Borrowers' responsibilities; (iv) to continue to pay escrow items (taxes and hazard insurance); (v) that "[u]pon modification, the new amount payable under [the] Note and the Mortgage [would] be increased to the total amount of the debt owed on" the Loan; and (vi) "that there would be a balloon payment in the estimated amount of $185,996.85. Id. at § 2-3, §§ 9, 10, and Balloon Disclosure; Ans. ¶¶ 11, 12.

After Borrowers again defaulted on their repayment obligations,[5] Plaintiff filed the instant action on December 28, 2015. In the Complaint, Plaintiff asserts claims for fraud (Count I), violation of the Federal Trade Commission Act, 15 U.S.C. § 45 et seq. (the "FTC Act") (Count II), misrepresentation (Count III), violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 1 et seq. (Count IV), and equitable estoppel (Count V). The crux of each of the five counts in the Complaint is Plaintiff's claim that certain monetary terms in the 2011 and 2014 Loan Modification Agreements constitute false statements of fact. See Compl.

In the Complaint, Plaintiff admits that he: (i) obtained the $475,000 Loan; (ii) defaulted on his repayment obligations; and (iii) applied for and entered into the 2011 and 2014 agreements modifying the Loan. See Compl. at ¶¶ 5, 7, 8, 10. The entire Complaint is based on Plaintiff's disingenuous allegations that Ocwen "misrepresented" the amount of the principal balance and balloon payment. See id. at ¶¶ 8, 11-13, 19, 25, 32, 37. While Plaintiff generally alleges that Ocwen made misrepresentations from 2006 to 2014, he only specifically identifies

---

[5] The Loan account, as modified, is due for the June 1, 2015 payment and all subsequent monthly payments.

monetary terms in the written 2011 and 2014 LMAs, which Borrowers received, had the opportunity to review, and signed. See Compl.; cf. Exs. G and I.

Specifically, Plaintiff alleges that Ocwen engaged in fraud/misrepresentation after or in conjunction with the 2011 LMA, by informing him that:

- the Loan's principal balance was $482,140.53; and
- "after applying a deferred balance of $9,00.00, the remaining loan balance was $472,240.53."

Compl. ¶¶ 8, 19, 25, 32, 37. These figures are express terms of the 2011 LMA. See Ex. G.

Plaintiff alleges that Ocwen engaged in further fraud/misrepresentation after or in conjunction with the 2014 LMA, by informing him that:

- the Loan's principal balance was a $472,823.93; and
- there would be a balloon payment of $185,996.85.

Compl. ¶¶ 11-13, 19, 25, 32, 37. Once again, these figures are express terms of the 2014 LMA. See Ex. J.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The standard of review on a motion for judgment on the pleadings mirrors that of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). To survive a 12(c) motion, "a complaint must contain factual allegations that 'raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true.'" Id. (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

6
34590711v1 0982215

the elements of a cause of action will not do." Bell Atlantic v. Twombly, 550 U.S. at 555 (internal quotation marks omitted). While the court accepts all factual allegations as true when reviewing motion to dismiss, it need not "'accept as true legal conclusions couched as factual allegations.'" Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, the court should not credit "bald assertions, unsupportable conclusions, … opprobrious epithets," or factual allegations "conclusively contradicted by plaintiffs' concessions or otherwise." Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

In reviewing a motion for judgment on the pleadings, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (citations and quotation marks omitted).

## IV. ARGUMENT

At issue in the Complaint are the monetary terms of the written 2011 and 2014 LMAs. There is no merit to Plaintiff's self-serving contention that these terms "do not make mathematical sense." See Compl. Borrowers defaulted on their repayment obligations and were offered modifications to cure the defaults. Borrowers chose to accept the modification offers after they received and had the opportunity to review the written terms. Plaintiff is not entitled to relief under these facts. For these reasons and the reasons discussed below, judgment should enter in favor of Ocwen, as a matter of law.

### A. Ocwen is entitled to judgment because the plain language of the 2011 and 2014 LMAs demonstrate that the Complaint is premised on fatal misrepresentations of fact and unsupported legal conclusions.

Ocwen is entitled to judgment as a matter of law because Plaintiff's overarching contention that Ocwen's calculations "do not make mathematical sense" results from Plaintiff's own misrepresentation regarding application of his payments. Review of the express terms of the 2011 and 2014 LMAs demonstrates that *Plaintiff's Complaint* is premised on fatal misrepresentations of fact. Specifically, Plaintiff alleges that he made 41 payments after the Loan was modified in 2011, and that $1,996.43 of each payment was applied to the principal of the Loan. See Compl. ¶¶ 11, 19(b), 25(b), 32(b), 37(b). This allegation is false. As demonstrated by the 2011 LMA, only $1,430.07 of each modified payment was applied to *both* principal and interest.[6] See Ex. G at § 3(C).

Further, Plaintiff suggests that Ocwen misrepresented the principal balance and other monetary terms of the Loan. See Compl. ¶¶ 19, 25, 32, 37. These terms, however, are not misrepresentations and instead result from written modification agreements, which Borrowers received, had the opportunity to review and accepted through signature. See Exs. G and J; cf. Compl. See also Secured Worldwide, LLC v. Kinney, No. 15 Civ. 1761(CM), 2015 WL 4469652, *3 (S.D. N.Y. July 14, 2015) (terms of written agreement are not misrepresentations and instead are "simply contract terms"); Klar v. Fed. Nat'l Mort. Ass'n, No. 3:13-cv-00462-JAG, 2014 WL 3101420, *3 (E.D. Va. July 7, 2014) (contract terms detail parties obligations under contract and "are not statements of fact"). Plaintiff does not dispute that he sought two loan modifications following default, does not deny execution of these agreements or that the

---

[6] The account history reflects that approximately $640.00 to $660.00 of each payment was applied to principal and $753.00 to $786.00 was applied to interest.

Loan was modified, and fails to identify any false representation of fact on which he claims to have relied in signing the LMAs. See Compl.; see also Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013).

Finally, the Complaint lacks support for Plaintiff's conclusion that the monetary figures in the 2011 and 2014 LMA "do not make mathematical sense" or for Plaintiff's calculation of the alleged mortgage balance. These conclusions ignore Plaintiff's admission of default at the time of the 2011 and 2014 LMAs. Pursuant to these agreements, the principal balance was modified to bring the Loan current, and the new principal balance included arrearages consisting of not only the missed monthly payments, but also of escrow advances for taxes and insurance and other default-related costs and fees. Plaintiff also ignores the fact that the original Note and Mortgage contained balloon terms, which establish a total amount due at maturity above and beyond what Borrowers paid, and which resulted in lower monthly payments over the life of the loan. See Exs. A and B. A balloon amount was owed on the Loan and included in Note and in the 2011 and 2014 LMAs. See Exs. A, G and J.

Based on the foregoing analysis, Ocwen has demonstrated that the Plaintiff presents false allegations and premises as the focus and focal point of this cause of action when compared to the mortgage loan and modification documents at issue.. The Court should enter judgment in favor of Ocwen on all counts of the Complaint because the plain language of the LMAs reject Plaintiff's conclusory allegations.

### B. Ocwen is entitled to judgment because Plaintiff cannot satisfy the elements of his claims sounding in fraud or for equitable estoppel.

Claims for fraud, misrepresentation and equitable estoppel each require: (1) a representation made for the purpose of inducing the plaintiff to act in reliance thereon; (2) an act or omission by the plaintiff in reasonable reliance on the representation; and (3) detriment

9

(injury) to the plaintiff as a result of such act or omission. See Woods, supra, 733 F.3d at 357-358 (fraud); Hinchey v. NYNEX Corp., 979 F. Supp. 40, 44 (D. Mass. 1997) (misrepresentation); Gould v. Bank of New York Mellon, 123 F. Supp. 3d 197, 204 (D. Mass. 2015) (equitable estoppel). Importantly, the injury must be caused by the plaintiff's reliance on the alleged statements. See Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 469 (2003). Claims for fraud and misrepresentation also require that the representation be a false representation of material fact. See Woods, 733 F.3d at 357-358; Hinchey, 979 F. Supp. at 44. Further, claims sounding in fraud must "satisfy the particularity requirements set forth in Fed. R. Civ. P. 9(b), mandating specifics about the time, place and content of the alleged false representations." Woods, 733 F.3d at 358 (claims sounding in fraud must specify time, place and content of alleged false representations) (citations and internal quotation marks omitted); see also Ouch v. Fed. Nat'l Mortg. Ass'n, No. 11-12090-RWZ, 2013 WL 139765, *1 (D. Mass. Jan. 10, 2013) (pleader must "specify the who, what, where and when of the allegedly false or fraudulent representation").

Here, each count of the Complaint is based on the same allegations sounding in fraud. For the following reasons, Plaintiff is unable to satisfy the elements of his claims.

First, Plaintiff has failed to identify a representation made for the purpose of inducing him to act in reliance thereon. The terms of a contract or written agreement between parties are not statements of fact nor can they be considered misrepresentations. See Secured Worldwide, LLC v. Kinney, 2015 WL 4469652, at *3; Klar v. Fed. Nat'l Mort. Ass'n, 2014 WL 3101420, at *3. In Klar, the court granted the defendants' motion for judgment on the pleadings and dismissed the plaintiff's fraud claims based, in part, on the court's finding that the plaintiff failed to establish that the defendants made a material misstatement of fact. The plaintiff alleged that

10

the defendants misrepresented the terms of a loan modification agreement and how the terms would be enforced. The court rejected this argument, holding, in relevant part, that "contract terms… are not statements of fact," and instead "simply detail the parties' obligations under the contract." 2014 WL 3101420, at *3.

Here, Plaintiff relies upon the express monetary terms of the 2011 and 2014 LMAs Borrowers accepted. Plaintiff, however, has no legal basis to claim misrepresentation based upon the contract terms. Further, the only "representation" which could have induced Plaintiff's action was that the Loan would be brought current if modified pursuant to the terms offered to Borrowers. This representation is not at issue in the Complaint because the Loan was modified pursuant to the written terms which Borrowers received, had the opportunity to review and signed.

Second, Plaintiff fails to plead sufficient facts that he engaged in act(s) or omission(s) in reasonable reliance on any alleged representation by Ocwen. Plaintiff's legal conclusion that the monetary terms of the 2011 and 2014 LMAs "do not make mathematical sense" is meritless and disputed. Notwithstanding, because Plaintiff maintains that the terms "do not make mathematical sense," as a matter of law, he cannot also claim that he reasonably relied on Ocwen's alleged "representations" of the terms of the LMAs. Although Plaintiff received the benefit of the Loan being brought current by signing and thereby agreeing to the terms offered in the 2011 and 2014 LMAs, Plaintiff was under no obligation to accept the modification offers or to sign the LMAs. That Borrowers may not have been able to cure their defaults by other means does not create a right of action against Ocwen. Borrowers are also unable to satisfy the reliance element of their claims because they made payments after the Loan was modified in 2011 and 2014. See Compl. ¶¶ 11, 13.

Finally, the Complaint fails to allege facts sufficient to demonstrate injury resulting from an act or omission by Plaintiff in reliance on Ocwen's alleged misrepresentations. In an effort to satisfy the "detriment" element of his claims, Plaintiff alleges that: (i) he made trial payments and payments after the Loan was modified; (ii) the modifications caused him to lose equity in the Property; (iii) his credit has been negatively impacted by foreclosure proceedings; and (iv) he has incurred court and legal fees. First, Massachusetts courts have held that the detriment element is not satisfied by a borrower making modified mortgage payments. See, e.g., Kiluk v. Select Portfolio Servicing, Inc., No. 11-10731-FDS, 2011 WL 8844639, *4-6 (D. Mass. Dec. 19, 2011). Second, Plaintiff's allegation of negative impact on credit resulting from foreclosure ignores that Borrowers defaulted on the loan through missed monthly mortgage payments, and Plaintiff does not allege any facts to separate or isolate negative credit report that results from Ocwen's alleged misrepresentations. Third, any alleged reduction in resulted in from Borrowers' decision to modify the Loan. Any legal fees, costs and expenses Plaintiff incurred, understanding that he is proceeding *pro se* in this action, result solely from Plaintiff's challenge to foreclosure through specious claims. Accordingly, Plaintiff cannot demonstrate a causal relationship between the representations and injuries alleged in the Complaint.

Further still, there is no duty to negotiate a loan modification after a borrower defaults on his repayment obligations. See Cabrera v. Sovereign Bank, No. 1:13-cv-10335-RGS, 2014 WL 1803311, *3 (D. Mass. May 7, 2014); Sankey v. Aurora Loan Services, LLC, 757 F. Supp. 2d 57, 59 (D. Mass. 2010) (lender not required to modify all eligible loans under Home Affordable Modification Program). Nonetheless, Borrowers were offered and accepted the modifications, receiving the benefit of the bringing the Loan current and avoiding foreclosure. Plaintiff does not allege that Borrowers would have cured the default by some other means if they were not offered

12

the 2011 and 2014 LMAs containing the alleged "representations," or that Borrowers would have considered other loss mitigation options. Under these facts, there is no detriment to Plaintiff.

Based on the foregoing, Plaintiff is unable to satisfy the elements of his claims sounding in fraud and for promissory estoppel. As such, Ocwen is entitled to judgment as a matter of law.

**C.    Ocwen is entitled to judgment as to Count II because the FTC Act does not create a private right of action.**

Plaintiff's claim for violation of the FTC Act fails as a matter of law because no private right of action exists. Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 46 (2015); Flores v. OneWest Bank, F.S.B., --- F. Supp. 3d ----, 2016 WL 1170961,*4 (D. Mass. Mar. 23, 2016). As such, Ocwen is entitled to judgment in its favor as to Count II of the Complaint.

**D.    Ocwen is entitled to judgment as to Count IV asserted pursuant to M.G.L. c. 93A, § 9.**

1.    Plaintiff fails to satisfy the 30-day demand letter requirement.

Chapter 93A has a jurisdictional prerequisite. Smith v. Jenkins, 777 F. Supp. 2d 264, 267 (1st Cir. 2013). Specifically, at least thirty (30) days before the filing of an action pursuant to the statute, "a written demand letter for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective" defendant. Id. (quoting M.G.L. c. 93A, § 9(3)). See id. (quoting Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 287 (1985) ("We have often held that a 'demand letter listing the specific deceptive practices claimed is a prerequisite to suit and [is] a *special element that must be alleged and proved ....*'"), and Lingis v. Waisbren, 75 Mass. App. Ct. 464, 469 (2009) (where there was no evidence "that the [demand] letter had been sent, received, or replied to," plaintiff's Chapter 93A claim necessarily failed)). "The demand letter must describe the complained-of acts with reasonable specificity." Id. (citing Piccuirro v.

13

Gaitenby, 20 Mass. App. Ct. 286, 291–292 (1985)). "[T]here is no right to obtain relief for any wrongful act that is not described in the letter." Id. (citing Bressel v. Jolicoeur, 34 Mass.App.Ct. 205, 211 (1993)).

"[I]n addition to defining the injury suffered and the relief sought," the demand letter must also include: "(1) an express reference to c. 93A; (2) any express reference to the consumer protection act; (3) any assertion that the rights of the claimant[] as [a] consumer[] have been violated; (4) any assertion that the defendant has acted in an unfair or deceptive manner … ; (5) any reference that the claimant[] anticipate[s] a settlement offer within thirty days …; (6) any assertion that the claimant will pursue multiple damages and legal expenses, should relief be denied;" or (7) "some other signal which will alert a reasonably perceptive recipient" that "the claimant intends to invoke the heavy artillery of c. 93A." Cassano v. Gogos, 20 Mass. App. Ct. 348, 350-351 (1985). Massachusetts law requires a plaintiff to plead compliance with the demand letter requirement in order to pursue a 93A claim. Kanamaru v. Holyoke Mut. Ins. Co., 72 Mass. App. Ct. 396, 407-408 (2008) (citations omitted). See McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 217-218 (1st Cir. 2012) (The demand letter requirement is not a procedural nicety, but, rather, a prerequisite to suit.") (citations and internal quotation marks omitted).

Here, Plaintiff fails to allege sufficient facts to satisfy the 93A pleading requirement – presumably, because his alleged "demands" are insufficient under the statute. Specifically, and in what appears an attempt to satisfy the jurisdictional requirement, Plaintiff alleges that he "made demands to Ocwen for relief and [Ocwen's] refusal to grant relief upon demand was and is in bad faith with knowledge or reason to know that the act or practice complained of violated 93A." See Compl. ¶ 40. Thus, Plaintiff alleges only that he "made demands to Ocwen for relief" at some unspecified time(s) and in some unspecified form(s) and that Ocwen knew or should have

known that Plaintiff's alleged "demands" complained of an act or practice that violated 93A. See id. Plaintiff's allegation is insufficient to satisfy the statutory prerequisite of a written demand for relief under M.G.L. c. 93A, mailed or delivered at least 30 days before filing suit, which describes the alleged unfair or deceptive act or practice and the alleged injury, and which also identifies one of the factors enumerated in Cassano v. Gogos, 20 Mass. App. Ct. at 350-351; M.G.L. c. 93A, § 9(3). Plaintiff does not satisfy 93A merely with a "demand" that he claims a defendant knew or should have known complains of a 93A violation. As such, Ocwen is entitled to judgment in its favor as to Count IV of the Complaint, as a matter of law.

2. **Plaintiff's 93A claim is based on the same insufficient facts as his common law claims.**

Ocwen is entitled to judgment as to Count IV for the additional reason that Plaintiff cannot sustain his 93A claim because it based on the same allegations as his failed common law claims. In Guillaume v. Wells Fargo Home Mortg. Corp., No. 12-12176-NMG, 2014 WL 2434650, *4 (D. Mass. May 30, 2014), the Massachusetts federal court dismissed a 93A claim that relied entirely on discredited fraudulent misrepresentations. Similarly, in Macoviak v. Chase Home Mortg. Corp., 40 Mass. App. Ct 755, 760 (1996), the Massachusetts Appeals Court affirmed judgment in favor of the defendants on a 93A claim that arose out of common law fraud where the mortgagor was unable to establish fraud. Here, Ocwen has demonstrated above the absence of any basis for Plaintiff to assert claims for fraud or misrepresentation. See supra Section IV(A)(B). Without any claim for fraud or misrepresentation in this action, Plaintiff has no basis to assert a 93A claim.

### 3. The Complaint fails to identify any conduct that is unfair or deceptive.

Separately and independently, Plaintiff fails to plead sufficient facts to support a 93A claim. The elements of a 93A claim are similar to fraud/misrepresentation. To state a 93A claim, a plaintiff must show that: (1) the defendant committed an unfair or deceptive act or practice; (2) economic injury; and (3) a causal connection between the injury suffered and the defendant's unfair or deceptive act. Gould v. Bank of New York Mellon, 123 F. Supp. 3d 197, 205 (D. Mass. 2015) (citations omitted); Brown v. Bank of Am., Nat.'l Ass'n, 67 F. Supp. 3d 508, 514 (D. Mass. 2014) (citations omitted). "A practice is unfair if it falls within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen." Gould, 123 F. Supp. 3d at 205. (citations and internal quotation marks omitted). "Conduct is 'deceptive' when 'it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted.'" Brown, 67 F. Supp. 3d at 514 (citations omitted).

Here, Plaintiff fails to allege any facts that would demonstrate an unfair act or practice by Ocwen. There is no dispute Borrowers defaulted on their Loan repayment obligations and faced foreclosure. In response, Ocwen offered Borrowers multiple loan modifications as an option to cure the defaults and avoid foreclosure. Borrowers received, had the opportunity to review and signed the 2011 and 2014 LMAs. After Borrowers made certain required payments, the Loan was modified pursuant to the written terms of the LMAs. Plaintiff's dislike of the terms does not allege facts sufficient to demonstrate a level of rascality against which M.G.L. 93A was created to protect. Further, and based upon reasons discussed above regarding Plaintiff's failure to satisfy the causation and detriment elements of his fraud/misrepresentation and promissory

16

estoppel claims, Plaintiff also fails to demonstrate economic injury caused by an alleged violation of 93A. See supra Section IV(B). Accordingly, Ocwen is entitled to judgment, as a matter of law.

### E. The Complaint is time-barred to the extent based on the terms of the 2011 LMA.

Claims for fraud and misrepresentation accrue on the date the plaintiff learned or reasonably should have learned of the alleged misrepresentation(s) and are subject to a three-year statute of limitations. Nazzaro v. Richard O'Neill, Jr. & Assocs., PC, 76 Mass. App. Ct. 1106, 2010 WL 26463, *2 (Jan. 7, 2010); Kent v. Dupree, 13, Mass. App. Ct. 44, 47 (1982). Claims under M.G.L. c. 93A are subject to a four-year statute of limitations. M.G.L. c. 260, § 5A ("Actions arising on account of violations of any law intended for the protection of consumers, including but not limited to [M.G.L. c. 93A] shall be commenced only within four years next after the cause of action accrues."). Where, as here, a 93A claim sounds in fraud and is supported by the same factual allegations as a plaintiff's fraud claims, the 93A claim also accrues on the date Plaintiff learned or reasonably should have learned of the alleged misrepresentation(s). See Kent v. Dupree, 13 Mass. App. Ct. at 47.

Plaintiff's claims that arise out of the 2011 LMA are time barred. The written monetary terms of the 2011 LMA were clear, express and agreed to by Borrowers, and Plaintiff has no basis to claim the terms were inherently unknowable. As a result, Plaintiff's claims accrued on the date the terms of the 2011 LMA were received by Borrowers, and no later than January 13, 2011, when Borrowers signed the 2011 LMA. See Azevedo v. U.S. Bank N.A., --- F. Supp. 3d ---, 2016 WL 913143, *3 (D. Mass. Mar. 9, 2016) (finding discovery rule inapplicable to 93A claim based on alleged unfair and deceptive

loan modification terms as claim did not involve inherently unknowable harm). As Plaintiff did not file the instant action until December 28, 2015, over four years after Borrowers signed the 2011 LMA, the Complaint is time barred to the extent based on the terms of the 2011 LMA.

## V. CONCLUSION

For the reasons stated above, Defendant Ocwen Loan Servicing, LLC, requests that this Court enter judgment in its favor and against Plaintiff Joe A. Rodriguez as to each count of the Complaint.

**Defendant,**
**Ocwen Loan Servicing, LLC,**
By its attorneys,

Dated: June 20, 2016        */s/ Valerie N. Doble*

Maura K. McKelvey, BBO No. 600760
Samuel C. Bodurtha, BBO No. 665755
Valerie N. Doble, BBO No. 663883
HINSHAW & CULBERTSON LLP
28 State Street, 24th Floor
Boston, MA 02109
Tel: 617-213-7000 / Fax: 617-213-7001
Email: mmckelvey@hinshawlaw.com
         sbodurtha@hinshawlaw.com
         vdoble@hinshawlaw.com

## CERTIFICATE OF SERVICE

I, Valerie N. Doble, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 20, 2016.

Joe A. Rodrigues
538 Elm Street East
Raynham, MA 02767

*/s/ Valerie N. Doble*
Valerie N. Doble